May it please the Court, my name is Jetta Hatch and with my co-counsel Gabriella Marufo, we represent the petitioner Gore Mnatsakanyan. I'd like to reserve one minute for rebuttal and we'll watch the clock. Your Honor, the petition for review is from the IJ's erroneous adverse credibility determination. There are two sub-issues that we'd like to discuss. I'll discuss the issue of the IJ's erroneous determination regarding corroboration. My co-counsel will address the improper use of speculation and conjecture. Your Honor, the issue, legal errors are reviewed under the de novo review as opposed to substantial evidence. In this case, there are two legal errors committed by the IJ. First, he improperly did not give Mr. Mnatsakanyan notice of the requested corroboration and an opportunity to explain why the evidence was not available as required by this court in Chen. Secondly, the IJ further did not base his determination as to whether the evidence was available on the totality of the record as a whole as required by Shrestha. Because of this, the IJ's determination that this evidence was reasonably available and therefore could be, the failure to provide it could be a basis for an adverse credibility determination was also in error. The evidence ---- What if we agree with you on the point that the IJ owed this Petitioner the chance to bring it in? What then? What happens? Then, Your Honor, this should, this Court should remand to allow the Petitioner to make that explanation and ---- Or to bring it in. As I read the record, he wasn't really given any warning before the IJ's decision that the IJ wanted it. He was not. And, in fact, he was led to believe that there was ---- that he had provided sufficient evidence. The IJ stated at the close of the hearing that the document ---- he believed the documents that had been submitted, which documented both his detention and the injuries he sustained, were genuine documents. And he also, in his opinion, stated that Mr. Gaborkyan, who testified on behalf of Mr. Mnatsakanyan, was a credible witness. Was this argument made to the BIA? The argument as to the availability of the corroboration was made, Your Honor, on page 15 and 16 of the brief. The evidence on the record as a whole does compel the determination that this evidence was not reasonably obtainable and, therefore, can't be a basis for an adverse credibility finding. The evidence shows that Mr. Mnatsakanyan's father was in prison, his brother had left the country, and his uncle had asked him not to contact him further because he believed that his phone was tapped. Also, he had no contact with any political associates of his father, with the exception of Mr. Babajanyan, who had also been arrested at this time. And this was in advance of when he even filed for asylum and long before he actually consulted with counsel so that he would be informed of a need for corroboration. Because this evidence on the record compels a determination that this is ---- the evidence was not reasonably obtainable, it cannot be demanded by the IJ, and, therefore, cannot be a basis for an adverse credibility finding. If you have no further questions, I'll defer the remainder of my time to my co-counsel. Kagan. Well, do you think that the credibility finding is based entirely on matters that he failed to have an opportunity to respond on? No, Your Honor. It's also based on the ---- as far as the corroboration, yes. However, as far as plausibility and minor inconsistencies, he was given an opportunity to explain some of the inconsistencies. The IJ did not specifically address, for example, why he felt that the explanation of a translation error was not credible. Do you have no further questions? Well, what about the ---- your second point with respect to the new statute? Does that help you? I'm sorry, what statute? I thought you had a point that this was not ---- I can't pronounce it either. That's fine. Shrestha. Shrestha. Shrestha also mandated that the evidence or the determination must be based on the evidence as a whole. The IJ is not allowed to merely cherry-pick evidence, which he did in this case, stating that because he had been in the U.S. for a year and had contacted his uncle once by phone, that was sufficient to constitute the equivalent of constant contact with his family, which he compared to Inouye Kualo, great name as well, which ---- in which case the petitioner there had friends in the city where the hearing was held who could have corroborated his statements as well as constant contact with family members in Nigeria, which was not present in this case.  Thank you, Your Honor. May it please the Court? My name is Gabriella Marufo, and I will be addressing the immigration judge's failure to base his adverse credibility determination on evidence on the record. The IJ in this case failed to provide specific and cogent reasons for his determination and to assess the credibility standards based on the rule of reason and taking into account the totality of the circumstances. What do we do with the problem that he says he arrives in April and he says in his testimony that he had with him the document about the hospitalization, yet the date of arrival is not April, but rather October? Yes, Your Honor. That is correct. However, the inconsistency in that particular issue is between the date of arrival, Mr. Matsakanyan's date of arrival to the U.S., and the date in the stamp, the notary stamp. But at no point has the content of the letter been disputed. The IJ actually stated on the record that had he considered the document to be fraudulent, he would have not admitted it into evidence. Also, there is... Well, that may be right, but he does say in his decision that that weighs against the credibility, not because the underlying document is necessarily fraudulent, because the hospital stay was, according to his testimony, of course, before he came, but he says, I had the document with me when I came to the United States, but if the October date is right, that can't be true. Yes, Your Honor. And when asked about the inconsistency, Mr. Matsakanyan, Mr. Matsakanyan failed to recall an explanation for such inconsistency. Excuse me. But that would fall within the rule of reason that this Court stated and stressed that within the limits of human understanding and memory. And furthermore, the IJ stated on the record that he, although the inconsistency was not enough to sustain the adverse credibility determination, it was a factor among them. And the other factors that he relied his determination on are not permissible because they are based on speculation and conjecture and trivial inconsistencies, which this Court in Shaw stated are not substitutes for evidence on the record. And which ones would you say are conjectural? For example, there's another inconsistency. I just want to see how you respond to it. In his testimony, he says very clearly that his father had been detained the first time for four hours. Yet the written statement earlier says, although it's odd, it doesn't say for four days. It says within four days, which doesn't quite scan. But how do we deal with that inconsistency? Your Honor, the asylum application reads four days. When Mr. Manasseh-Kanyan was asked about this inconsistency in his testimony, he promptly corrected this error and stated that he told the preparer, because the asylum application was prepared by a third party, that he never said four days, that he said four hours, and that he did not know why that information appeared on the asylum application. So this — Does he read English? No. No, he doesn't speak or read English. Okay. So he — this is a translation error. We can make that inference from the information on the record. The preparer was not — we do not have any information or an affidavit from the preparer. And furthermore, the scoring Garavilla said that discrepancies that weaken the asylum claim should not form the basis for an adverse credibility determination, which is the case. That's an odd form of a lie, if he's weakening his own claim. Yeah. So for the foregoing reasons, we ask this Court to grant petition for review. And I would save the rest of the time for rebuttal. Thank you. We'll give you a full minute. Which one of you is going to take it? Thank you. Good morning, Your Honors. May it please the Court. Mary Simonian on behalf of the Attorney General. This is a post-real ID credibility case, and the standard is totality of the circumstances. I'd like to point the Court's attention to the various factors that support the agency's adverse credibility determination. Obviously, opposing counsel concentrates on corroboration as being their strongest point. However, there are several, several inconsistencies, implausibilities, vagueness. Before you — Go ahead. Can you just explain to me — Sure. — how the lack of corroboration got into this case? Yes. The IJ was basically adding as an additional point that Petitioner was not credible and then saying — In his decision. How it got in. Okay. Go ahead. I'm sorry. So then he indicated that there was some reasonably attainable evidence that he could have brought in, such as some more affidavits from his family, photographs of their injuries. But this is in his decision? Yes. But not at the hearing? I don't believe he indicates specifically, no, those documents, no, during the hearing. And he never asked in the hearing that the Petitioner provide corroboration? He gave limited weight to the corroboration that was presented during the testimony. And indicated that during the testimony and during the hearing. But that wasn't quite the question. The question is, during the hearing, did he alert the Petitioner that more corroboration was needed? I'll answer that question twofold. No, he didn't. I know that's the answer you want. Well, I mean, I want the answer that's the true answer. Right. That's the true answer. But secondly, the basis of his decision is not solely or exclusively or even heavily rested on the corroboration factor. And either is the Board's decision, and that's the decision we're reviewing today. There is so many credibility factors, and if I can go through a few, I want to address one of them, the four hours versus four days. This so-called translation error that's being thrown out here without any knowledge of the Armenian language at all or translations between Armenian and English. And if I may, for the court, I'm fluent in Armenian, just say that those two words, days and hours, are quite different in the Armenian language. And I know that's extra, but I just want to point it out there to the court. So his attempt to blame later after pointing out to that, after the I.J. points out that this credibility determination is based on that inconsistency, later to point out, well, my preparer messed it up, it's just, you know, it's a good excuse, but it's still a valid inconsistency on a main point. What do you do with two points with respect to this four-hour, four-day thing? Number one, the English that says within four days, the within doesn't really make any sense in context. Right. So there's something a little screwy about it. Right. Now, it may only be the word within that's a little screwy, but that leads me to think, well, wait a minute, something may be deeply wrong here. But further, we're very much accustomed to cases where the written asylum application, you know, somebody finally gets a hold of a lawyer and the lawyer says, you know, this doesn't cut it. And so the story gets better. Okay. And we're very suspicious, and the I.J.'s are, with good reason, very suspicious when the written testimony is stronger than the, excuse me, when the oral testimony, the hearing is stronger than the written. This goes the other way. I mean, if he wanted to say four days, he would not be cut up in an inconsistency, and his case would be stronger. I disagree. I think that he was, he stuck to his guns. I'll give him that to say, yes, it was four hours, no, it was four hours. But that inconsistency still exists. I mean, you can't. No, no, you're not taking my point yet. Okay. So if he read this, he saw that his lawyer read it. They both read it, and the asylum application says four days. If he knew it was four hours, but he didn't want to get caught up in an inconsistency, he could have said four days, his case would have been stronger, and he would not have been caught out in an inconsistency. But despite that, he says four hours. In the same token, I could say maybe he forgot. Maybe he didn't know his incredible story. I don't want to, his, you know, his made-up story so well that he, you know, messed it up during the testimony. Yeah, that can happen. Although I've read, you know, we've all read. I've read an awful lot of these transcripts. And typically when somebody gets caught up in a, you know, the written thing says four hours, or the written thing says four days. The normal response is some confusion, or I don't know, or I forgot. There's nothing. He just says, uh-uh, four hours. Boom. No hesitation, no nothing. Obviously, I'll stick to the IJ's decision and say that it was a major inconsistency. However, even taking that fact, there were several others. One that you pointed out was the medical document. I won't go into too much detail with that, as he didn't provide much of an explanation for the inconsistency. The next was the inconsistency between, or the implausibility that he would have gotten a letter from the police who had just beat him in order to give it to his employer. I want to point out something that was brought up in the reply brief, which was basically that they said it seemed reasonable that he would be afraid to lie to a consular official about his persecution when he went there to get a visa. However, they don't seem to think or find it reasonable that he would be scared to suggest that he would go obtain documentation from his alleged persecutors. Well, he didn't do it. He said his uncle got it. His uncle did it. But, however, that's still bringing attention. He knows that he wanted to obtain it for Petitioner, and it brings attention to Petitioner himself. Just because someone else went for him, that doesn't mean the police still can't go after him later on, if that was true. So here you go. But the argument that the I.J. is making is that it's implausible that the employer would have wanted documentation as to why he missed work, and it's implausible that he would have sent his uncle to get the documentation. No. Actually, what the I.J. said was, with all due respect, Your Honor, that he had visible injuries when he returned to work a few days later, that he had a medical document documenting that he had been injured or had injuries and was treated for them, and that Minatsa Kanyan testified that police wanted him not to tell anyone about the detention. Based on all those circumstances, he found it was unlikely that they would have gone to obtain or needed to obtain this document. Where in the testimony does he say that the police told him not to tell anybody about the detention?  If you give me a minute, I'll point that out. Yeah, yeah, sure. Don't take your time. It's on page 93 of the record. Okay. After signing those documents or blank papers, anything else happen? They told me not to tell anybody regarding this arrest, detention, or whatever. I'm sorry. Okay. I'm with you. So I would say, based on those circumstances and those facts, the I.J. found that it was implausible that they would even try to obtain that document, when really, based on the record, it didn't seem like it was needed. Can you help me? I'm having trouble understanding what to do with the I.J.'s reliance on the failure to provide corroboration. The board didn't mention that, as I read it. The I.J. says that there was an opportunity to provide corroboration, and it wasn't provided. But I thought in our exchanges, you agreed that he actually wasn't, in the hearing, given any opportunity to provide additional corroboration. So I'm a little mystified. If you mean that ---- I don't see it really addressed in the red brief. So if you mean to say that the I.J. never said, let's take a recess or whatever to bring ---- I want these specific documents, is that what you mean? We never ---- so far as I can see, it never said, do you have any additional corroboration, or questioned the adequacy of the corroboration that was there. I just don't quite understand. I think on the first point, he didn't specifically ---- and again, we're harping on this, but I still say the adverse credibility determination was really based on the inconsistencies and implausibilities and not the lack of ---- I know you say that, but we have to read the ---- Right. And so on the second point, I think he did indicate the weight he was giving during the testimony of the corroboration provided. That could have been an indication to his attorney that, you know, that he wasn't giving that much weight to what was provided in the record at that point. Was this addressed in the red brief as a ---- We addressed that the corroboration was reasonably obtainable and that it was reasonable for that immigration judge to accept it, to ---- That that was it, not the notice issue. Right. Okay. I only have a few more seconds, so I'll just go through some of the other inconsistencies that support the IG's decision, the second being the implausibility that Mazakana didn't know the political party that his father belonged to after knowing other details of his involvement, that he couldn't describe his father's injuries, they were vague. Yeah. I think we've been through those and we're familiar with them. Okay. Thank you, Your Honor. Any other questions? No. I appreciate your time. Thank you. Thank you. Your Honor, I have just two points on rebuttal. First is that this Court has been very clear that substantial or that speculation and conjecture are not a substitute for substantial evidence. And that's what the three grounds of implausibility are. It's based entirely on speculation. There's no evidence in the record as to how the police agencies would act or whether Mr. Mazakana would take risks in order to secure his job. I mean, he's a sportsman and this is a karate coaching job. It's very important to him. Secondly, the BIA noted that the IJ's credibility determination was of a cumulative nature and the IJ did not rely on any one factor for the basis of the credibility. One of the first factors that he noted was the corroboration on the first part of the analysis on page 48 of the record. But because this is a cumulative or an aggregate determination, if any of the grounds that were improper grounds for an adverse credibility determination, the Court needs to What do we do with, I think I can answer my own question, but I'd be interested in your answer. I'm familiar with this IJ. If we remand saying, you know, your request for corroboration was really too late, wasn't proper warning, you can't consider corroboration as part of your calculus, please reevaluate, allow to come in and so on, I know what Judge Gasly is going to do. He's going to say, you know, I'm going to make the same determination irrespective of the lack of corroboration. So do we just remand anyway? I know what's going to happen. Your Honor, this Court pointed out in the recent case of Chawla that when sufficient grounds fail, the Court can remand and hold the petitioner to be credible. In other cases, this Court has also remanded with instructions to assign the case to a different IJ or with a recommendation that it be assigned to a different IJ. If, based on your knowledge of the IJ, that would be appropriate, we would welcome that. Thank you, Your Honors. Thank you. The Court very much appreciates the participation of the University of Idaho in this case, and we thank the government for her argument. And the case just argued is submitted, and the Court stands adjourned.
judges: Moody, Schroeder, Fletcher W.